UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIREE BAILEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMPOWER FEDERAL CREDIT UNION,<br><br>Defendant. | Civil Action No. 3:21-CV-0843 (DNH/ML)<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Shiree Bailey, on behalf of herself and all others similarly situated brings this class action complaint against Empower Federal Credit Union, and alleges the following:

### INTRODUCTION

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Empower Federal Credit Union ("Empower" or the "Credit Union"), arising from the unfair and unconscionable assessment and collection of "overdraft fees" ("OD Fees") on accounts that were never actually overdrawn.

2. This practice breaches contractual promises made in Empower's adhesion contracts.

3. In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that Empower will only charge OD Fees or NSF Fees on transactions where there are insufficient funds to cover them.

4. Empower also breaches its duty of good faith and fair dealing when it charges fee in the above circumstance.

1

5. Empower's customers have been injured by Empower's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with Empower.

6. On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

7. Plaintiff is a citizen and resident of Binghamton, New York.

8. Defendant Empower is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. Empower has its headquarters in Syracuse, New York.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of New York; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Empower is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.   EMPOWER CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT**

    **A.   Overview of Claim**

11. Empower issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

12. Pursuant to its Account Documents, Empower charges fees for debit card transactions that purportedly result in an overdraft.

13. Plaintiff brings this cause of action challenging Empower's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

14. Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Empower immediately reduces accountholders checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because Empower has already sequestered these funds for payment.

15. However, Empower still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

16. Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Empower later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of transactions are APPSN Transactions.

17. Empower maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to

account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Empower sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

18. Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

19. That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

20. Still, despite keeping those held funds off-limits for other transactions, Empower improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

21. Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

22. There is no justification for these practices, other than to maximize Empower's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But Empower is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But Empower was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

23. Besides being unfair and unjust, these practices breach contract promises made in

Empower's adhesion contracts—contracts which fail to inform accountholders about, and in fact, misrepresent, the true nature of Empower's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

24. In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that Empower will only charge OD Fees on transactions that have insufficient funds to "cover" that debit card transaction.

25. In short, Empower is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

### B. Mechanics of a Debit Card Transaction

26. A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Empower. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to Empower, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

27. At this step, if the transaction is approved, Empower immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

28. Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which

6

may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

29. Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

30. Empower (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization. After that, Empower is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when Empower may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

31. There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

    **C.**    **Empower's Account Documents**

32. Plaintiff has an Empower checking account, which is governed by Empower's Account Documents.

33. Amongst the Account Documents which govern Plaintiff's relationship with Empower is a document entitled, *Consumer Membership & Account Agreement* ("Account Agreement"), attached hereto as Exhibit A. The Account Agreement states in pertinent part that

7

Empower uses an available balance to determine overdrafts, and when an accountholder uses a debit card funds are deducted to cover those purchases:

> **Determining your available balance** - We use the "available balance" method to determine whether your account is overdrawn, that is, whether there is enough money in your account to pay for a transaction. Importantly, your "available" balance may not be the same as your account's "actual" balance. This means an overdraft or an NSF transaction could occur regardless of your account's actual balance. Your account's actual balance (sometimes called the ledger balance) only includes transactions that have settled up to that point in time, that is, transactions (deposits and payments) that have posted to your account. The actual balance does not include outstanding transactions (such as checks that have not yet cleared and electronic transactions that have been authorized but which are still pending). The balance on your periodic statement is the ledger balance for your account as of the statement date.
>
> As the name implies, your available balance is calculated based on the money "available" in your account to make payments. In other words, the available balance takes transactions that have been authorized, but not yet settled, and subtracts them from the actual balance. In addition, when calculating your available balance, any "holds" placed on deposits that have not yet cleared are also subtracted from the actual balance. For more information on how holds placed on funds in your account can impact your available balance, read the subsection titled "A temporary debit authorization hold affects your account balance" and "Your Ability To Withdraw Funds" disclosure also provided. Overdrafts - You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later. So you can NOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past.
>     [...]
>
> **A temporary debit authorization hold affects your account balance** - On debit card purchases, merchants may request a temporary hold on your account for a specified sum of money when the merchant does not know the exact amount of the purchase at the time the card is authorized. The amount of the temporary hold may be more than the actual amount of your purchase. Some common transactions where this occurs involve purchases of gasoline, hotel rooms, or meals at restaurants. When this happens, our processing system cannot determine that the amount of the hold exceeds the actual amount of your purchase. This temporary hold, and the amount charged to your account, will eventually be adjusted to the actual amount of your purchase, but it could be three calendar days, or even longer in some cases, before the adjustment is made. Until the adjustment is made, the amount of funds in your account available for other transactions will be reduced by the amount of the temporary hold. If another transaction is presented for payment

in an amount greater than the funds left after the deduction of the temporary hold amount, you will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy. You will be charged the fee even if you would have had sufficient funds in your account if the amount of the hold had been equal to the amount of your purchase.

Exhibit A (emphasis added).

34. The additional Overdraft Disclosure states Empower needs the customer's permission to receive "courtesy" payment of overdrafts:

**To sign up for Debit Card Courtesy Pay, you will need to contact us**.
We need your permission if you want to receive Courtesy Pay to protect your account. Without your permission, any overdrawn purchases made with your debit card, or ATM withdrawals exceeding your available balance, will be DECLINED.*

The federal government requires all financial institutions to request permission from their members/customers when offering overdraft services on ATM and everyday debit card transactions. Empower's Debit Card Courtesy Pay can only be offered with your permission.

**Who's affected?**
All of our Members who use our Debit Cards for purchases or for ATM withdrawals.

**How can I receive overdraft services?**
Call us, visit us at your local branch, or contact us through the "Messages" selection in the dropdown menu when you hover over your name within online banking.

* Account must be open for 30 days prior to activation of this service.

**What You Need to Know about Overdrafts and Overdraft Fees**
An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway.  We can cover your overdrafts in two different ways:
- We have standard overdraft practices that come with your account.
- We also offer overdraft protection plans, such as a link to your savings account, which may be less expensive than our standard overdraft practices.  To learn more, ask us about these plans.

**What are the standard overdraft practices that come with my account?**
We <u>do authorize</u> and pay overdrafts for the following types of transactions:
- Checks and other transactions made using your checking account number
- Automatic bill payments

We <u>do not authorize</u> and pay overdrafts for the following types of transactions unless you ask us to:

9

- ATM transactions
- Everyday debit card transactions

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction.

If we do not authorize and pay an overdraft, your transaction will be declined.

**What fees will I be charged if Empower Federal Credit Union pays my overdraft?**
Under our standard overdraft practices:
- We will charge you a fee of up to $25 *each time* we pay an overdraft.
- There is no limit on the total fees we can charge you for overdrawing your account.

**How long do I have to pay back my overdraft fees?**
The amount of any overdraft, plus any fees, shall be due and payable within thirty (30) days of the account becoming overdrawn. You are obligated to reimburse Empower by depositing sufficient funds to cover the item or transaction paid and any associated fees. Reimbursement shall be made through direct deposit (including directly deposited Social Security Benefit payments), transfer of funds, or regular deposit.

35. For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to cover those transactions—yet Empower assesses OD Fees on them anyway.

36. The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

37. APPSN transactions are always initiated at the time the customer swipes the debit card when there are sufficient available funds in the account.

38. In fact, Empower actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

39. All the above representations and contractual promises are untrue. In fact, Empower

10

charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that Empower may impose OD Fees on any APPSN Transactions.

40. The Overdraft Disclosure misconstrues Empower's true debit card processing and overdraft practices.

41. First, and most fundamentally, Empower charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that Empower will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

42. Empower assesses OD Fees on APPSN Transactions that **_do_** have sufficient funds available to cover them throughout their lifecycle.

43. Empower's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Empower's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

44. Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

45. Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what Empower does when it re-debits the account during a secret batching posting process.

46. In reality, Empower's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

11

47. At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, Empower cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

48. Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Empower does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, Empower releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

49. This secret step allows Empower to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which Empower specifically set aside money to pay them.

50. This discrepancy between Empower's actual practices and the contract causes accountholders to incur more OD Fees than they should.

51. In sum, there is a huge gap between Empower's practices as described in the Overdraft Disclosure and Empower's practices in reality.

D. **Empower Abuses Contractual Discretion**

52. Empower's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the Account Documents. In addition, Empower exploits contractual discretion to the detriment of accountholders when it uses these policies.

53. Moreover, Empower uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

54. Empower uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### E. <u>Plaintiff's Debit Card Transactions</u>

55. As an example, on October 21, 2019, and on November 14, 2019, Plaintiff was assessed OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff was assessed OD Fees.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The proposed classes are defined as:

57. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated. The Class is defined as:

> All accountholders who, during the applicable statute of limitations, were charged OD Fees on APPSN Transactions on a Empower checking account.

> Plaintiff also brings her claims on behalf of a subclass of New York accountholders in the event the Court declines to certify a nationwide class.

58. Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

59. Plaintiff reserves the right to modify or amend the definition of the proposed Class

and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

60. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Empower has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

    a) Whether Empower improperly charged OD Fees on APPSN Transactions;

    b) Whether the conduct enumerated above violates the contract;

    c) Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

    d) Whether the conduct enumerated above is a deceptive trade practice in violation of New York law;

    e) The appropriate measure of damages.

61. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Empower's records. Empower has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

62. It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory

judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

63. Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Empower, as described herein.

64. Plaintiff is a more than adequate representative of the Class in that Plaintiff is a Empower checking accountholder and has suffered damages as a result of Empower's contract violations. In addition:

    a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

    b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

    c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

65. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

66. Empower has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

67. All conditions precedent to bringing this action have been satisfied and/or waived.

### **BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Individually and on Behalf of the Class)**

68. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth

herein.

69. Plaintiff, and all members of the proposed Class contracted with Empower for checking account services, including debit card services.

70. Empower breached promises made to Plaintiff and all members of the proposed class when as described herein, Empower charged OD Fees as a result of transactions that did not overdraw a checking account, on APPSN Transactions.

71. In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

74. Empower has breached the covenant of good faith and fair dealing and abused its

discretion in its contract as described herein. Specifically, Empower should not have used its discretion to charge OD Fees on APPSN Transactions. The Account Documents do not have a contract term permitting OD Fees on such transactions, nor multiple NSF Fees on the same transaction, and the documents are otherwise ambiguous as to any right for Empower to charge OD Fees on APPSN Transactions.

75. Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

76. Plaintiff and all members of the proposed Class have sustained damages as a result of Empower's breaches of the contract.

### New York General Business Law, N.Y. Gen. Bus. Law § 349 *et seq.*
**(On Behalf of the Class)**

77. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

78. Empower's practice of charging fees on APPSN transactions violates New York General Business Law § 349 ("NYGBL § 349").

79. NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

80. As a credit union with its headquarters and multiple branch locations in New York, Empower conducted business, trade or commerce in New York State.

81. In the conduct of its business, trade, and commerce, and in furnishing services in New York, Empower's actions were directed at consumers.

82. In the conduct of its business, trade, and commerce, and in furnishing services in New York, Empower engaged in deceptive, unfair, and unlawful acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

17

      a.      Empower misrepresented material facts, pertaining to the sale and/or furnishing of banking services to the New York Class by representing and advertising that it would only charge overdraft fees when an overdraft actually occurred; and

      b.      Empower omitted, suppressed, and concealed the material fact that it would charge fees on APPSN transactions.

83.      Empower systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Class.

84.      Empower willfully engaged in such acts and practices and knew that it violated NYGBL § 349 or showed reckless disregard for whether they violated NYGBL § 349.

85.      As a direct and proximate result of Empower's deceptive trade practices, members of the New York Class suffered injury and/or damages, including assessment of OD Fees on APPSN transactions.

86.      Had Plaintiff known she could be charged OD Fees on APPSN transactions, she would have made different payment decisions so as to avoid incurring such fees or opted out of OD protection.

87.      As a result of Empower's violations of NY GBL § 349, Plaintiff and members of the putative Classes have paid and will continue to pay excessive fees to Empower. Accordingly, they have suffered and will continue to suffer actual damages.

88.      Accordingly, Plaintiff and New York Class members are entitled to relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action on behalf of the Class;

B. Declaring Empower's OD Fee policies and practices to be in breach of its contract with accountholders;

C. Restitution of all OD Fees and improperly assessed paid to Empower by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D. Actual damages in an amount according to proof;

E. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F. For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

G. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: July 26, 2021                                Respectfully submitted,

By: */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (Bar Roll No. 518372)
Sophia Gold (Bar Roll No. 701241)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielgold.com*

*Attorneys for Plaintiff and the Putative Class*